MASCO CORPORATION,
Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee,

and

Mosler, Inc. and Hamilton Products
Group, Inc., Third Party
Defendants,

and

Mas–Hamilton Group, Inc., Third
Party Defendants.

No. 01–5107.

United States Court of Appeals,
Federal Circuit.

DECIDED: Aug. 28, 2002.

Michael D. Harris, Oppenheimer Wolff & Donnelly LLP, of Los Angeles, CA, argued for plaintiff-appellant. With him on the brief were Christopher Darrow and Charles Rosenberg.

John J. Fargo, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; Vito J. DiPietro, Director, and Robert G. Hilton, Attorney.

Before NEWMAN, CLEVENGER, and LINN, Circuit Judges.

LINN, Circuit Judge.

Masco Corporation ("Masco") appeals from the judgment of the Court of Federal Claims holding, on cross-motions for summary judgment, that the United States had not infringed the claims of U.S. Patents Nos. 5,540,068 and 5,778,711, directed to an electronic dial combination lock. *Masco Corp. v. United States*, 49 Fed. Cl. 337, 59 USPQ2d 1036 (Fed.Cl.2001) ("*Masco Corp.*"). We conclude that the court erred in construing the "transmitting a force applied to the dial to the lever" limitation as a step-plus-function limitation, but did not otherwise err in its claim construction. Moreover, we conclude that the court erred in holding that issue preclusion applied to the issues of whether a lever was pushed in the accused device and whether pushing and pulling actions were

equivalent. Accordingly, we affirm-in-part, reverse-in-part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

The litigation that culminated in the present appeal began on March 1, 1999, when Masco sued the United States for reasonable compensation for the alleged use by the United States of the '068 and '711 patents, assigned to LaGard, Inc. ("LaGard"). LaGard merged into Masco prior to the filing of this suit. In its complaint, Masco identified a high security electronic dial combination lock, designated "X–07," as the device that allegedly infringed Claims 1–3 of each patent. This lock was produced by third party defendant Mas–Hamilton Group ("Mas–Hamilton") and was supplied to the General Services Administration, an agency of the Federal government. Third party defendants Mosler, Inc. and Hamilton Products Group, Inc. incorporate the patented lock into products that they sell to the United States.

This case is related to an earlier lawsuit between Mas–Hamilton and LaGard in the Eastern District of Kentucky. *Mas–Hamilton Group v. LaGard, Inc.*, 21 F.Supp.2d 700 (E.D.Ky.1997) ("*Mas–Hamilton I*"). *Mas–Hamilton I* concerned U.S. Patent No. 5,307,656, which is the parent of the '068 and '711 patents. In that case, the court determined that the '656 patent was not invalid, and that the accused device, which was the same X–07 lock, did not infringe the apparatus claims of the '656 patent either literally or under the doctrine of equivalents. *Mas–Hamilton I* at 740. We affirmed the judgment of the district court in *Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 48 USPQ2d 1010 (Fed.Cir.1998) ("*Mas–Hamilton II*").

Claim 1 of each of the '068 and '711 patents sets forth a method of controlling an electronic lock; these are the only independent claims in suit. Claim 1 of the '068 patent is reproduced below.

1. A method of controlling an electronic lock including a dial, a rotatable cam wheel operably connected to the dial and defining a surface, a locking mechanism movable between a locked position and an unlocked position, and a movable lever operably connected to the locking mechanism and having a protrusion adapted to engage the cam wheel, the method comprising the *steps of*:

holding the lever in a position where the protrusion cannot contact the surface of the cam wheel and in such a manner that the lever and the dial are operably disconnected and the lever will not move in response to rotation of the dial;

electronically determining whether an input combination corresponds to a predetermined combination;

operably connecting the lever and the dial, while maintaining the lever in a position where the provision cannot contact the surface of the cam wheel in response to a determination that the predetermined combination has been input; and

*transmitting a force* applied to the dial *to the lever* after the lever and the dial have been operably connected *to drive* the lever to a position where the protrusion can contact the surface of the cam wheel in such a manner that the lever will be pulled by the cam wheel during rotation of the cam wheel.

(Emphases added.)

Claim 1 of the '711 patent is similar; it is reproduced below.

1. A method of controlling a lock including a knob, a rotatable cam wheel operably connected to the knob and defining a surface, a locking mechanism movable between a locked position and an unlocked position, and a movable lever operably connected to the locking mechanism and having a protrusion adapted to engage the cam wheel, the method comprising the *steps of*:

holding the lever in a position where the protrusion cannot contact the surface of the cam wheel and in such a manner that the lever and the knob are operably disconnected and the lever will not move in response to rotation of the knob;

receiving an unlock signal;

*forming a rigid connection between the lever and the knob* with at least one substantially rigid member, while maintaining the lever in a position where the protrusion cannot contact the surface of the cam wheel, in response to a receipt of the unlock signal; and

*transmitting a force* applied to the knob *to the lever* through the rigid connection after the lever and the knob have been operably connected *to drive* the lever to a position where the protrusion can contact the surface of the cam wheel in such a manner that the lever will be pulled by the cam wheel during rotation of the cam wheel.

(Emphases added.)

Masco's patented lock is depicted in Figure 1 of the '068 patent, which is reproduced below.

In the patented lock, the lever 46 normally does not engage cam wheel 47. The lever 46 has a cantilever arm 52 resting in a notch in solenoid housing 62. When a

solenoid within the solenoid housing 62 receives a signal, plunger 98 within the solenoid housing moves and projects a ball 96 upward. Tooth 92 on the periphery of cam wheel 47 engages projected ball 96. Subsequent to this, force is supplied from the rotation of the dial. As the dial is rotated, thus turning cam wheel 47, force from tooth 92 acting on the ball 96 forces the solenoid housing 62 to the right. Cantilever arm 52 integral with and angled with respect to the lever 46 remains in contact with the solenoid housing 62. The solenoid housing 62 thus drives cantilever arm 52 and lever 46 counterclockwise. This force drives lever 46 toward cam wheel 47 until protrusion 48 on the lever 46 engages a slot 88 on the cam wheel 47. Further cam wheel rotation pulls the lever 46 to the left to withdraw the locking bolt 36.

Masco contends, and the government does not dispute, that U.S. Patent No. 5,487,290 describes the accused X–07 lock. Figure 6A of that patent, which depicts the initial locked position of the mechanism, is reproduced below.

FIG. 6A

In the X–07 lock, a stepper motor 308 rotates a gear through a small arc. The rotation of this gear meshes a toothed outer portion 306 on one side of the gear with gear teeth 276 on the periphery of a cam wheel. Dial and cam wheel rotation then acts through the gear teeth 276 to rotate the stepper motor gear clockwise. The rotation of the stepper motor gear drives a linkage, which acts on the bottom of sliding element 232 to drive the element downward (compare Figure 6A with Figure 6C, below). The element 232 has a left-facing slot that receives a pin on lever 252. Downward movement of the sliding element moves the pin and the lever 252 downward until a protrusion 256 of the lever 252 engages a slot 400 on the cam wheel. At this point, the position of the mechanism is as shown in Figure 6C below. Continued rotation of the cam wheel pulls the lever 252 to the left to withdraw bolt 212.

208 400 264 252 232

256

276 276

250

278 212

226 304 300

FIG. 6C

In the present case, the Court of Federal Claims held a *Markman* hearing to construe several disputed claim limitations, and issued a claim construction ruling. *Masco Corp. v. United States*, 47 Fed. Cl. 449 (Fed.Cl.2000) (*"Claim construction ruling"*). Among these, the court construed "to drive" to mean "to push," *id.* at 456, held that a "dial" must bear divisions that a user can read, *id.* at 458, and construed "forming a rigid connection between the lever and the knob" of Claim 1 of the '711 patent to require "a rigid connection between all parts in the chain of parts between the lever and the knob during the unlocking procedure," *id.* at 459. The court held that the "holding the lever in a position" step in each independent claim was not a step-plus-function limitation, because the court determined that "holding" was an act which precluded treatment under 35 U.S.C. § 112, paragraph 6. *Id.* at 454. Similarly, the court

held that the "operably connecting the lever and the dial" step of Claim 1 of the '068 patent was not a step-plus function limitation, because the court determined that "connecting" was an act. *Id.* at 455. However, the court held that the "transmitting a force" step of each independent claim was a step-plus function limitation, because the court held that "transmitting" was a function, not an act. *Id.*

After issuing its claim construction ruling, the Court of Federal Claims entertained cross-motions for summary judgment and granted summary judgment of noninfringement to the United States. *Masco Corp.* at 345, 59 USPQ2d at 1044. The court held that Masco was precluded from proving that the lever in the accused X–07 lock was pushed, or that pulling and pushing were equivalent actions, because of the district court's findings in *Mas–Hamilton I*. Specifically, the Court of Federal Claims relied on the *Mas–Hamilton I* court's findings that

[t]he '656 patent lock accomplishes its "positively driving" function by *pushing* the lever into the cam wheel. In the X-07 lock, the lever is *pulled* into the cam wheel *in a substantially different way.* Thus, the X-07 lock mechanism is not the same as disclosed in the '656 patent specification, nor is it equivalent....

*Id.* at 339, 59 USPQ2d at 1038 (quoting *Mas–Hamilton I* at 733) (emphases added). The Court of Federal Claims concluded that the push/pull issue before it was identical to the push/pull issue in *Mas–Hamilton I* and was actually litigated in the earlier case. *Id.* at 342, 59 USPQ2d at 1041. The court also held that the push/pull issue was necessary to the judgment in *Mas–Hamilton I. Id.* at 344, 59 USPQ2d at 1043. Finally, the court found that the issue had been fully and fairly litigated in the Kentucky district court. *Id.* The court thus precluded Masco from attempting to establish that the lever was pushed in the X-07 or that pushing and pulling are equivalent. Because Masco was unable to establish as a matter of law either literal infringement or infringement under the doctrine of equivalents, the court entered summary judgment of noninfringement of both the '068 and '711 patents. *Id.* at 345, 59 USPQ2d at 1044. Masco appeals the court's grant of summary judgment of noninfringement to the government, its denial of Masco's motion for summary judgment of infringement, and the court's construction of the "to drive," "dial," "forming a rigid connection between the lever and the knob," and "transmitting a force" limitations.

We have jurisdiction over this appeal from the Court of Federal Claims under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### A. Standard of Review

Claim construction is a matter of law and is reviewed de novo. *Markman v.* *Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). We review a grant of summary judgment de novo, reapplying the same legal standard as the trial court. *Ford Motor Co. v. United States,* 157 F.3d 849, 854 (Fed.Cir. 1998). The application of issue preclusion is reviewed de novo. *Hallco Mfg. Co. v. Foster,* 245 F.3d 1369, 1374 (Fed.Cir.2001).

### B. Analysis

#### 1. Claim Construction

##### a. "To Drive"

■ The Court of Federal Claims interpreted the term "to drive" as meaning "to push." Masco challenges this interpretation, stating that the word "drive" is broader than the word "push" and that the court improperly read in limitations from the preferred embodiment. We affirm the court's construction of this limitation.

■ We begin, as did the Court of Federal Claims, with the words of the claim itself. The court cited a general dictionary definition defining "to drive," in part, as "[t]o push, propel, or press onward forcibly." *Claim construction ruling* at 457 (quoting *The American Heritage Dictionary of the English Language* 563–64 (3d ed.1996)). However, the court found that the plain language of the claim did not resolve the question of the scope of "to drive." *Id.* at 456. Although the definition cited suggests that the force moves away from the actor, other definitions do not indicate this. For example, a definition of "drive" taken from the field of mechanical engineering defines the term simply as "[t]he means by which a machine is given motion or power ... or by which power is transferred from one part of a

machine to another." *McGraw–Hill Dictionary of Scientific and Technical Terms* 616 (Sybil P. Parker et al. eds., 5th ed.1994). Because the plain meaning did not resolve the construction of the term, the court properly turned for guidance to the intrinsic record, consisting not only of the claims themselves, but also the specification and the prosecution history that was in evidence. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324, 63 USPQ2d 1374, 1380 (Fed.Cir.2002); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed. Cir.1996) (holding such intrinsic evidence to be "the most significant source of the legally operative meaning of disputed claim language"). The court found that the specification implicitly equates "to drive" with "to push":

> When the proper combination has been entered, all parts of the lock are linked. The critical point is the junction between the camshaft wheel, which has a "boss," and the solenoid housing, which has a "detent." The specification states that "[t]he solenoid cam surface includes a small sloped protrusion or boss 92 ... for engaging and pushing an extended detent in the solenoid housing 62 upon rotation of the cam wheel." Col. 5, lines 49–54. Correspondingly, "[t]he solenoid housing 62 is a rigid body or element, ... for positively operating, driving or moving the lever from its disengaged position to a position for engaging the nose part 48." Col. 5, lines 59–63.
>
> The cam surface and the solenoid housing operate together. The cam surface "push[es]" the solenoid housing and the solenoid housing "driv[es]" the lever. Therefore, there is a clear, if implicit, equalization between "to drive" and "to push" in the specification.

*Claim construction ruling* at 456.

The Court of Federal Claims also made reference to the prosecution history of the parent '656 patent, which was properly in evidence, and which the parties "agreed ... was intrinsic evidence to be used in construing the '068 patent and the '711 patent." *Id.* The prosecution history of a parent application may be considered in construing claim terms. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980, 52 USPQ2d 1109, 1114 (Fed.Cir.1999) ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation."); *Jonsson v. The Stanley Works*, 903 F.2d 812, 818, 14 USPQ2d 1863, 1869 (Fed.Cir.1990); *see also Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d 285, 291, 36 USPQ2d 1095, 1100 (Fed.Cir.1995) (holding that, for estoppel purposes, the relevant prosecution history included not only the application upon which the patent issued but also the parent and grandparent applications). The court determined that the prosecution history of the '656 patent showed that "the applicants thought of the 'driving' force as a 'pushing.'" *Claim construction ruling* at 457. The court found support for this in the following passage from a proposed Amendment After Final Rejection that was submitted on August 20, 1993:

> Consider briefly Applicant's invention. One aspect of Applicant's invention is directed to a combination lock having improved tamper resistance. The present invention also provides more predictable operation of the lock by *positively engaging* the fence lever with the cam wheel when the nose part on the fence lever and the slot in the cam wheel are properly aligned. The tamper resistance and improved operation features of the lock in one aspect of the invention

are provided, in part, by either (1) holding the lever out of engagement with the cam wheel, (2) *providing a positive driving mechanism for pushing the lever into engagement with the cam wheel,* and/or (3) providing *a means by which the cam wheel can push a link mechanism such as a shaft or rod to push the lever into engagement with the cam wheel* when a portion of the cam wheel is properly aligned with a portion on the shaft so as to allow the cam to push the shaft after entry of a proper combination.

*Id.* at 456–57.

■ The term "to drive" was inserted into Claim 1 of the issued '068 patent in an amendment submitted on May 2, 1994. This amendment was made in response to a rejection of the claim as anticipated by a German patent, number 3,817,696. In the lock described in the German patent, a tension spring pulls the lever into engagement with the cam wheel surface after an electromagnetic blocking element has been moved. The pertinent part of the amendment reads as follows:

> *transmitting a force applied to* [rotating] the dial *to the lever* after the lever and the dial have been operably connected to *drive* [move] the lever to a position where the protrusion can contact the surface of the cam wheel *in such a manner that the lever will be pulled by the cam wheel during rotation of the cam wheel.*

Masco argues that "drive" is a part of the description of the action in which the force that moves the lever is transmitted from the dial, not supplied from some other source such as the spring in the German patent. Masco relies on the explanatory argument in the same amendment, which distinguished the German reference:

the force generated by the spring is not applied to the dial. Nor is it transmitted from the dial to the lever. Thus, in contrast to the present invention, the German reference fails to teach or suggest a combination of method steps including the step of "transmitting a force applied to the dial to the lever ... to drive the lever."

Masco points out that it did not argue that "drive" distinguished prior art that pulled or explicitly define "drive" to mean "push." Because of this, Masco argues, the amendment did not distinguish pushing and pulling, nor did it limit the direction of force.

We do not agree. The addition of "transmitting a force applied to the dial to the lever" to the claim by itself made clear that the force that moves the lever is transmitted from the dial, not from some other source. As the Court of Federal Claims found, the patentee's use of the term "drive" in the specification equated driving with pushing. The amendment distinguished the pushing action of the claimed invention from the pulling action disclosed in the German patent by inserting the word "drive," denoted in the specification as a pushing action, in place of the word "move," which had no directional connotations. Masco's proposed definition of "drive" to encompass pulling actions is inconsistent with the specification of the '068 patent and with the prosecution history of the '068 patent and its parent patent. *See Litton Sys., Inc. v. Honeywell, Inc.,* 140 F.3d 1449, 1453, 46 USPQ2d 1321, 1323 (Fed.Cir.1998) (rejecting a patentee's proposed broad construction of a claim limitation as "inconsistent with the prosecution history"). Because the amendment distinguished the pulling action found in the German patent, Masco cannot now maintain that the proper scope of the "to

drive" term is broad enough to encompass that pulling action.

### b. Step–plus–Function

■ Masco argues that the court erred in applying § 112, paragraph 6 to the fourth step of the methods set forth in Claim 1 of the '068 patent and Claim 1 of the '711 patent. In particular, it argues that the court erred in holding that the phrase "transmitting a force" used in those claims was properly interpreted as a function, not as an act. The government responds that the phrase is too amorphous to be interpreted as an act. We agree with Masco.

■ Section 112, paragraph 6, provides that:

An element of a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, paragraph 6 (2000). It is well established that this statutory provision can apply not only to a combination of mechanical elements, but also to "a combination of ... steps in a process claim." *O.I. Corp. v. Tekmar Co.,* 115 F.3d 1576, 1582, 42 USPQ2d 1777, 1781 (Fed.Cir. 1997) (quoting P.J. Federico, Commentary on the New Patent Act, 35 U.S.C.A. Vol. 1, p. 25 (1954), *reprinted in* 75 J. Pat. & Trademark Off. Soc'y 161, 186 (Mar.1993)). The use of the word "means" to describe a claim limitation "gives rise to 'a presumption that the inventor used the term advisedly to invoke the statutory mandates for means-plus-function clauses.'" *Sage Prods., Inc. v. Devon Indus., Inc.,* 126

F.3d 1420, 1427, 44 USPQ2d 1103, 1109 (Fed.Cir.1997) (quoting *York Prods., Inc. v. Central Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1574, 40 USPQ2d 1619, 1623 (Fed.Cir.1996)). Similarly, in the context of method claims, the use of the term "steps for" signals the drafter's intent to invoke § 112, paragraph 6. *Greenberg v. Ethicon Endo–Surgery, Inc.,* 91 F.3d 1580, 1583, 39 USPQ2d 1783, 1785 (Fed.Cir. 1996). However, even where the drafter employs the "step for" language, "section 112, ¶ 6 is implicated ... only when steps plus function *without acts* are present." *O.I. Corp.,* 115 F.3d at 1582, 42 USPQ2d at 1782.

■ Claim 1 of both the '068 and '711 patents sets forth a method of controlling a lock, comprising a number of steps. The fourth step of the method of Claim 1 of the '068 patent is set forth below.

[T]he method comprising the steps of · · ·

transmitting a force applied to the dial to the lever after the lever and the dial have been operably connected to drive the lever to a position where the protrusion can contact the surface of the cam wheel in such a manner that the lever will be pulled by the cam wheel during rotation of the cam wheel.

'068 patent, col. 8, ll. 23, 37–42. The fourth step of the method of Claim 1 of the '711 patent is similar; it is reproduced below.

[T]he method comprising the steps of · · ·

transmitting a force applied to the knob to the lever through the rigid connection after the lever and the knob have been operably connected to drive the lever to a position where the protrusion can contact the surface of the cam wheel in such

a manner that the lever will be pulled by the cam wheel during rotation of the cam wheel.

'711 patent, col. 8, ll. 20–21, 34–40. Neither of these claims employs the "step for" language that signals the drafter's intent to invoke § 112, paragraph 6; rather, the claims employ the term "steps of." Thus, there is no presumption that these limitations are in step-plus-function format.

In construing these limitations, the Court of Federal Claims properly examined the claim limitations to see whether any act was present, stating that "[i]f an act is present, then the limitation is not a step plus function limitation." *Claim construction ruling* at 453. In its assessment of whether an act was present in each claim limitation, the court followed the reasoning of Judge Rader's concurrence in *Seal–Flex, Inc. v. Athletic Track and Court Construction*, 172 F.3d 836, 50 USPQ2d 1225 (Fed.Cir.1999). In his opinion, Judge Rader drew the following distinction between acts and functions under § 112, paragraph 6:

> the "underlying function" of a method claim element corresponds to *what* that element ultimately accomplishes·in relationship to what the other elements of the claim and the claim as a whole accomplish. "Acts," on the other hand, correspond to *how* the function is accomplished.

*Id.* at 849–50, 50 USPQ2d at 1234.

The court held that "transmitting" was a function rather than an act, reasoning that "[t]he word 'transmitting' without more does not explain how the force is transmitted." *Claim construction ruling* at 455. Since in the court's view this limitation set forth a function without an act, the court held that it was a step plus function limitation. *Id.*

We do not agree. Where the claim drafter has not signaled his intent to invoke § 112, paragraph 6 by using the "step[s] for" language, we are unwilling to resort to that provision to constrain the scope of coverage of a claim limitation without a showing that the limitation contains nothing that can be construed as an act. Method claims are commonly drafted, as in this case, by reciting the phrase "steps of" followed by a list of actions comprising the method claimed. An application of § 112, paragraph 6 in the present circumstances would render the scope of coverage of these method claims uncertain and disrupt patentees' settled expectations regarding the scope of their claims. "[C]ourts must be cautious before adopting changes that disrupt the settled expectations of the inventing community." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, — U.S. —, —, 122 S.Ct. 1831, 1834, 152 L.Ed.2d 944, 62 USPQ2d 1705, 1713 (2002). We thus hold that where a method claim does not contain the term "step[s] for," a limitation of that claim cannot be construed as a step-plus-function limitation without a showing that the limitation contains no act.

Such is not the case here. The underlying function of the "transmitting a force" limitations, or in Judge Rader's formulation, what those limitations ultimately accomplish in relation to what the other limitations and each claim as a whole accomplish, is to drive the lever into the cam. A standard mechanical engineering dictionary defines "transmission" as "[a] term applied to various methods of transmitting and transforming power as by (a) a line shaft, (b) belts and pulleys, and (c) gears." G.H.F. Nayler, *Dictionary of Mechanical Engineering* 406 (3d ed.1985). A general unabridged dictionary defines "transmit" as used in mechanics and phys-

ics to mean "[t]o cause (light, heat, sound, etc.) to pass through a medium; also, of a medium, to allow (light, etc.) to pass through; to conduct. Also, to convey (force or movement) from one part of a body, or of mechanism, to another." *Oxford English Dictionary*, Vol. XVIII 415 (2d ed.1989). "'Transmitting a force'" describes how the lever is driven into the cam. In other words, "transmitting" in the sense of causing a force to be conveyed through a medium by mechanical parts is an act, since it describes how the function of the "transmitting a force" limitation is accomplished. Accordingly, we reverse the holding of the Court of Federal Claims and hold that the "transmitting a force" limitation of Claim 1 of each of the '068 and '711 patents is not a step-plus-function limitation.

### c. Other Claim Limitations

■ In its claim construction ruling, the Court of Federal Claims held that the term "dial" in Claim 1 of the '068 patent must include divisions. *Claim construction ruling* at 458. Masco argues that the term should not be limited to dials bearing divisions. It cites a general dictionary definition, which states that "dial" means "[a] movable control knob or other device on a radio or television receiver used to change the frequency." Masco also cites passages from the specification in which the dial is described simply as a part that is rotated, causing internal parts to move. Masco also refers to the testimony of Mas–Hamilton's director of engineering from *Mas–Hamilton I*, describing a knob without divisions as a "dial."

We discern no error in the court's construction. The court found that the plain language of the claim did not resolve the issue, but noted a general dictionary defi-

nition of "dial" as "a plate or disk with graduations or figures, as for the indication of pressure, number of revolutions, etc., as by the movements of a pointer." *Claim construction ruling* at 458 (quoting *The American College Dictionary* 333 (1970)). In considering the intrinsic evidence, the court noted that the section of the specification describing related art states that "one class of lock is the electronic dial combination lock which uses a dial having divisions to enter a combination code . . . ." '068 patent, col. 1, ll. 21–24. The specification also distinguishes between the dial and the knob: "A dial 76 of well-known configuration is mounted to the external end of the shaft and includes a knurled knob 78 for both rotating and axially moving the dial." '068 patent, col. 5, ll. 7–10. The dial, which both the specification and a dictionary definition indicate has divisions, is thus distinguished from the knob, which does not. Accordingly, the term "dial" cannot be construed to cover knobs lacking divisions, and we affirm the court's construction of this limitation.

■ The Court of Federal Claims also considered the following limitation:

> forming a rigid connection between the lever and the knob with at least one substantially rigid member while maintaining the lever in a position where the protrusion cannot contact the surface of the cam wheel, in response to a receipt of an unlock signal.

'711 patent, col. 8, ll. 29–33. The court construed this limitation to require "a rigid connection between all parts in the chain of parts between the lever and the knob during the unlocking procedure." *Claim construction ruling* at 459. Masco argues that this limitation should be construed to require that after the lever and knob are

operably connected, any knob rotation yields predetermined lever movement. Masco's proposed construction departs significantly from the words of the claim, on which we must focus in construing the claim limitations. See *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996) ("First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention."). The court's construction, in contrast, focuses correctly on the words of the claim. We discern no error in that construction.

### 2. Issue Preclusion

 Under the doctrine of issue preclusion, a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit. *In re Freeman,* 30 F.3d 1459, 1465, 31 USPQ2d 1444, 1448 (Fed.Cir.1994). Issue preclusion is appropriate only when the following four elements are satisfied:

(1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action.

*Id.*

 Masco argues that the Court of Federal Claims erred in finding that issue preclusion applied to the factual issues of whether the lever was pushed or pulled in the X–07 lock and whether pushing was an equivalent of pulling in this context. Masco argues that the issue was not essential to the final judgment in the first action. It correctly notes that the court in *Mas–*

*Hamilton I* relied on other distinctions between the structure in the specification corresponding to a "lever operating means" limitation of the claims at issue and the structure of the accused X–07 lock, including, *inter alia,* the detent ball and the solenoid. *Mas–Hamilton I* at 733. The *Mas–Hamilton I* court also based its decision on other claim limitations in addition to the lever operating means. Since we have warned that "a determination that is supportable on alternative grounds may not have been as thoroughly considered on all of the possible grounds," *Comair Rotron, Inc. v. Nippon Densan Corp.,* 49 F.3d 1535, 1538, 33 USPQ2d 1929, 1932 (Fed.Cir.1995), Masco argues that preclusion should not apply. Masco also argues that in *Mas–Hamilton II,* this court had before it the push/pull distinction, but did not rely on that issue in affirming the district court's judgment, relying instead on the absence of a solenoid in the X–07. Masco cites the Restatement of Judgments, Second, § 27, Comment *o*:

> If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and ... the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination.

Masco argues that Comment o should apply here, making the judgment in *Mas–Hamilton I* conclusive only as to the solenoid issue, not as to the push/pull distinction.

The government argues that we have not adopted the bright-line test espoused in § 27, Comment o of the Restatement.

It argues that we should rather follow a suggestion in Comment i of the same section, which states in part:

If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.

Although this is the general rule, Comment i goes on to note that "[t]here may be cases where ... the balance tips in favor of preclusion because of the fullness with which the issue was litigated and decided in the first action." The government argues that this is such a case.

The government maintains, on the basis of *Comair Rotron* and *Tanker Hygrade No. 18, Inc. v. United States*, 208 Ct.Cl. 488, 526 F.2d 805 (1975), that the application of issue preclusion should be based on the materiality of the finding to the judgment, as well as the interests of justice and expediency. It argues that the factual findings underlying the non-infringement holding in *Mas–Hamilton I* were cumulative rather than alternative, because the finding in *Mas–Hamilton I* that the lever was pulled in the X–07 lock was given "as much attention as any other findings relating to non-infringement, and was firmly rooted in the claim language at issue." The government cites *Tanker Hygrade* for the proposition that cumulative findings in a prior action preclude relitigation of those facts in a later action between the same parties.

The law in this circuit does not favor the government's argument. In *Hannahville Indian Cmty. v. United States*, 180 Ct.Cl. 477, 1967 WL 8873 (1967), our predecessor court faced a situation similar to that in this case, involving a factual finding of the

Indian Claims Commission which was not addressed on appeal. In a subsequent proceeding, the Commission held that issue preclusion applied to the factual finding. The Court of Claims reversed, reasoning as follows:

when a lower court's decision on a question of fact is challenged in a proper appeal, and the appellate court does not pass upon that finding of fact in reaching its decision, the lower court's finding is not conclusive against the appellant in a subsequent suit on a different cause of action. The doctrine of res judicata must be so limited since a factual issue cannot, consistent with the statutory right to appellate review, be said to have been finally adjudicated when the appellant has been precluded from obtaining the appellate review which he sought and to which he would have been entitled if the fact had been material.

*Hannahville*, 180 Ct.Cl. at 485 (citations omitted). *See also Standard Oil Co. of Cal. v. United States*, 231 Ct.Cl. 112, 685 F.2d 1337, 1342 (1982) (extending *Hannahville* to findings addressing questions of law); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4421 (2d ed. 2002) ("[O]nce an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision.").

The government's attempt to distinguish Comment o and the rule set forth in *Hannahville* and rely instead on Comment i and *Tanker Hygrade* is unavailing. In *Tanker Hygrade*, the prior decision, involving Tanker Hygrade's parent corporation, Ira S. Bushey & Sons, Inc., dealt with nine oil spills that occurred on Lake Champlain over a period of several years. *United States v. Ira S. Bushey & Sons*,

*Inc.,* 363 F.Supp. 110 (D.Vt.1973). The court found defendant Bushey responsible at least in part for each of the spills, which caused "pollution . . . of a recurring nature." *Id.* at 121. On the basis of those findings, the court granted permanent injunctive relief against Bushey. *Id.* at 122–23. The district court's judgment was thus based on the cumulative effect of all its findings, rather than on alternative findings, any of which standing independently would have been sufficient to support the judgment, as premised by § 27, Comment i.

The *Tanker Hygrade* court itself recognized the distinction between cumulative and alternative factual findings in distinguishing *Halpern v. Schwartz,* 426 F.2d 102 (2d Cir.1970), the case from which the general rule of Comment i was taken:

> [W]e need not decide whether the Halpern approach is sound because the rule in Halpern is not applicable under the facts of this case. Halpern limits its application to a prior judgment resting on two or three independent, alternative grounds. In Halpern the three grounds were clearly in the alternative but in the present case the nine Bushey-connected oil spills between August, 1967, and November, 1972, were not for alternative consideration, instead they were offered and received by the district court for the cumulative effect. The district court found that the cumulative effect justified the issuance of the injunction.

*Tanker Hygrade,* 526 F.2d at 810.

In contrast, in *Mas–Hamilton I,* the district court made separate findings of fact relating not only to the structure in the X–07 lock corresponding to the "lever retaining means" limitation of Claim 1 of the '656 patent, but also relating to other limitations of that claim. In addition to its finding that "[i]n the X–07 lock, the lever is *pulled* into the cam in a substantially different way," *Mas–Hamilton I* at 733, the court also found that "the accused X–07 lock does not use a *solenoid* or the equivalent of a solenoid." *Id.* The court also found that the "lever movement blocking element" of Claim 1 did not read on the "separate slide member" of the X–07 lock, and that the X–07 lock did not include the "detent" stated to be part of the "lever operating means" of Claim 1. *Id.* Any one of these findings would have been sufficient to support the judgment of noninfringement of Claim 1, making them alternative, not cumulative, findings. On appeal, we did not rely on the finding that the lever was pulled into the cam, instead holding that the district court had not clearly erred in its determinations that the X–07 lock used a stepper motor rather than the solenoid literally covered by the means-plus-function limitation at issue, and that the stepper motor provided power to operate the lock in a substantially different way than the solenoid. *Mas–Hamilton II* at 1213, 156 F.3d 1206, 48 USPQ2d at 1016. Since we did not reach the push/pull issue in *Mas–Hamilton II,* we are constrained by our precedent to hold that Masco is not precluded from relitigating the issues of whether the lever is pushed into the cam in the X–07 lock and whether pushing and pulling are equivalent. *Hannahville,* 180 Ct.Cl. at 485 ("Because this court did not pass upon the Commission's [finding], we hold that the Commission's determination cannot serve as a bar to relitigation of that issue in these proceedings."); *Standard Oil,* 685 F.2d at 1342 (holding that a factual finding not disturbed on appeal did not collaterally estop litigation of a legal issue addressed by that finding). Accordingly, we remand for trial on these issues.

## CONCLUSION

The judgment of the court is

*AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.*

## COSTS

No costs.