Beed, Justice (Bet.),
delivered the opinion of the court:
This appeal from various orders of the Indian Claims Commission is brought to this court in accordance with Section 20(b) of the Indian Claims Commission Act.[1] The appellants[2] seek recognition of a right to share in awards which are being sought from the Commission as additional consideration for lands ceded to the United States by the Potawatomies, or groups thereof, in the treaties of July 4, 1805, 7 Stat. 87; November 17,1807, 7 Stat. 105; August 29, 1821,7 Stat. 218; and July 29,1829,7 Stat. 320.
A majority of the Commission has held that these several treaties were signed by the following autonomous “bands” of Potawatomies, and that such “bands” held title to the lands ceded:
Treaty: Band
Treaty of July 4, 1805_Potawatomies of the Huron (see 14 Ind. Ol. Comm. 204 (1964)).
Treaty of November 17, 1807_. Potawatomies of the Huron (see 14 Ind. Ol. Comm. 204 (1964)).
Treaty of August 29, 1821-Potawatomies of the St. Joseph (see 6 Ind. Ol. Comm. 414, 442 (1958)).
*480 Treaty of July 29,1829_United Nation of Chippewa, Ottawa and Potawatomi Indians (see 11 Ind. Cl. Comm. 641, 693 (1962)).
The appellants, according to the Commission majority (see 14 Ind. Cl. Comm. 329 (1964)), are descendants of the following autonomous Potawatomi “bands”:
Appellant: Band
The Hannahville Indian Community, United Nation Band. Forest County Potawatomi Community and four individuals (hereinafter referred to as the Hannahville group).
Albert Mackety-Huron Band.
Michael Williams_St. Joseph Band.
Proceeding on the unchallenged premise that only descendants of the particular landowning Potawatomi entity are entitled to share in awards necessitated by the unconscionably small sum paid by the United States in each of these treaties, the Commission has entered the following orders dismissing the appellants’ claims:
1. Claims arising from the treaties of 1805 and 1807. By the order of October 14,1964,14 Bid. Cl. Comm. 204 (1964), the Commission dismissed the claims of the Hannahvilles and Michael Williams on the ground that their ancestors’ bands were not signatories of either treaty. See 14 Ind. Cl. Comm. 204, 216-217. In the same order, the Commission denied a motion to make the representative of the Huron Band, Albert Mackety, a party plaintiff since, in the absence of a valid claim by the original plaintiffs, the Hannahvilles, Mackety’s claim was in effect an original petition which had been filed out of time.[3] See Id. at 217.
2. Claims arising from the Treaty of 18?A. By the order of December 2,1964,14 Ind. Cl. Comm. 329, the Commission dismissed the claims of the Hannahvilles and Albert Mackety since none of their ancestors were members of the band which signed this treaty. See 14 Ind. Cl. Comm. 329, 335-336. At *481 the same time, the Commission dismissed Michael Williams’ claim on behalf of the St. Joseph Band since, in the absence of a valid claim by the Hannahvilles, Williams’ claim was in effect an original petition which had been filed out of time.[4] See Id. at 388-339.
3. Claims arising from the Treaty* of 1829. In the order of April 15, 1965, 15 Ind. Cl. Comm. 232, the Commission declared that the appellants are entitled to assert claims for additional consideration for the lands ceded by the United Nation Band in this Treaty. However, the wording of that order and the opinion and findings of fact which that order partially modified, see 11 Ind. Cl. Comm. 641 (1962) (findings of fact), 11 Ind. Cl. Comm. 693 (1962) (opinion), indicate that only descendants of the United Nation, the signatory band, will be permitted to share in the additional payment.[5] If this is a correct interpretation of the intent of the Commission, then appellants Mackety and Williams, together with the Indians whom they represent, will not be permitted to share in the judgment since their ancestors were not members of the signatory band.
In support of their claims under the above treaties, the appellants have contended that during the Indian Treaty period of the nineteenth century, all Potawatomi Indians were members of a single political entity which held title to all lands occupied by Potawatomies. Thus, they reason, all descendants of Potawatomies are entitled to share in the *482 awards arising from the unconscionable terms of these treaties, regardless of which band signed the treaty. Accordingly, they urge that the dismissals of their claims in the orders now before the court were erroneous.
In an earlier case concerning the division of awards necessitated by the inadequate sums paid by the United States for Potawatomi lands west of the Mississippi, see Prairie Band of Potawatomi Indians v. United States, 4 Ind. Cl. Comm. 515, 539 (1956), aff'd, 143 Ct. Cl. 131, 165 F. Supp. 139 (1958), cert. denied, 359 U.S. 908 (1959) (hereinafter referred to as the Western Lands case), appellants, whose ancestors did not emigrate to the West, vigorously asserted this single entity contention before both the Commission and the Court of Claims. After analyzing the voluminous record, the Commission came to the conclusion that the evidence showed “beyond doubt that the Potawatomi people, at the time of the treaty of 1833 and the treaty of 1837, was composed of numerous groups who in their land dealings with defendant [the United States] acted independently of each other and as autonomous entities.” 4 Ind. Cl. Comm, at 524. The Commission’s ultimate rejection of appellants’ petition to intervene in the Western Land's litigation was affirmed by this court on the ground that since appellants’ ancestors had not joined their brothers in the west, they did not acquire an interest in the western lands. But in the course of the opinion, we wrote:
The question of the autonomy of the various bands of Potawatomi who roamed Ohio, Michigan, Indiana, Illinois and Wisconsin in the early years of the last century was fully examined and determined by the Indian Claims Commission, Yol. 4, Pt. 2, pp. 517-524. They reached this conclusion.
“The above transactions with Potawatomi Indians show beyond doubt that the Potawatomi people, at the time of the treaty of 1833 and the treaty of 1837, was composed of numerous autonomous groups who in their land dealings with defendant acted independently of each other and as autonomous entities.”
We agree with that conclusion from the facts found. [143 Ct. Cl. at 136-137, 165 F. Supp. at 143.]
This quoted material was prefaced by the statement that “in our view of the controlling facts in this case as to member *483 ship, it is immaterial whether the Potawatomies in the East were a single tribe or many hands. Appellants’ rights would be the same.” 143 Ct. Cl. at 136, 165 F. Supp. at 143.
In the opinions supporting the orders now before the court, the Commission majority rejected appellants’ single entity contention on the ground that since this fact issue had been finally determined in a previous litigation between the same parties, appellants were barred from relitigating the issue.[6] Thus, the first, and in our view, the controlling issue in the present appeal is whether the Commission properly relied upon the doctrine of res judicata.
The Indian Claims Commission majority’s conclusion that the appellants are estopped from relitigating the political structure question appears to rest on two alternative bases. In its opinion on appellants’ motion to admit additional evidence in proceedings on two of the claims now before this court, see 14 Ind. Cl. Comm. 172, the majority apparently recognized that the question of the political structure of the Potawatomi people was not essential to the judgment of the Court of Claims in the Western Lands case. However, it considered “inescapable” the conclusion that this court had accepted the findings and conclusions of the Commission in the Western Lands case with respect to the composition of the various bands or tribes during treaty times. 14 Ind. Cl. Comm, at 178-179. Since the Court of Claims had decided the disputed fact question, the Commission considered that the application of the doctrine of res judicata was authorized by this court’s decision in Choctaw Nation v. United States, 133 Ct. Cl. 207, 135 F. Supp. 536 (1955), cert. denied, 352 U.S. 825 (1956).[7]
*484 The Commission majority’s alternative basis for relying on tire doctrine of res judicata is emphasized in the opinion on the motions to dismiss appellants’ claims for additional compensation for the lands ceded by the Potawatomies in the treaties of 1805 and 1807. 14 Ind. Cl. Comm. 204. In that opinion, the majority appears to have relied particularly upon the alternative position that since the factual issue of the political structure of the Potawatomies had been decided by the Commission in the Western Lands litigation, and since the Commission’s finding had not been disturbed on appeal, the factual issue could not be relitigated in a subsequent suit between the same parties. In our view, neither of these rationales will support the application of the doctrine of res judicata in these cases.
The Res Judicata Effect of the Decision of this Court in the Western Lands Litigation. Contrary to the Commission majority’s understanding, this court did not decide the “immaterial” question of the political structure of the Potawat-omies in the Western Lands case. While we did express agreement with the Commission’s conclusion that the Pota-watomi tribe was composed of numerous autonomous bands, our agreement was premised entirely upon “the facts found” by the Commission. See 143 Ct. Cl. at 137. We did not look behind those facts to determine whether they were supported by substantial evidence, as would have been our obligation had we undertaken to approve the Commission’s determination of the political structure question. See Osage Nation v. United States, 119 Ct. Cl. 592, 97 F. Supp. 381, cert. denied, 342 U.S. 896 (1951). Since we did not decide the question of the political structure of the Potawatomi Indians during the treaty period, the decision of this court in the Western Lands case could not bar relitigation of the issue.
The Res Judicata Effect of the Commission's Western Lands Decision. Although it is not clear that the Commission’s Western Lands case finding concerning the political structure of the Potawatomies was essential to its judgment, and though that finding appears to have been relevant only to a period subsequent to the years of the treaties involved in this appeal, we assume, without deciding, that the Commission’s Western Lands determination of the Potawatomi *485 political structure was sufficiently broad to justify application of the doctrine of res judicata in this proceeding, bad there been no appeal. And we assume that the Commission’s determinations of fact may have a res judicata effect in subsequent proceedings.[3] But we cannot accept the Commission majority’s conclusion that because its finding on the political structure question was not disturbed on appeal, appellants are estopped from relitigating the question in these proceedings. On the contrary, according to the great weight of judicial and scholarly opinion, when a lower court’s decision on a question of fact is challenged in a proper appeal, and the appellate court does not pass upon that finding of fact in reaching its decision, the lower court’s finding is not conclusive against the appellant in a subsequent suit on a different cause of action. See International Refugee Organization v. Republic S.S. Corp., 189 F. 2d 858 (4th Cir., 1951); Moran Towing and Transportation Co. v. Navigazione Libera Triestina S.A., 92 F. 2d 37 (2d Cir.), cert. denied, 302 U.S. 744 (1937); St. Joseph Union Depot Co. v. Chicago, R.I. & P. Ry., 89 F. 648 (8th Cir. 1898), cert. denied, 172 U.S. 649 (1899); 1B J. Moore, Federal Practice para. 0.416 [2] (1965); Restatement of Judgments §69(2) (1942); Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1 (1942). But see Russell v. Russell, 134 F. 840 (3d Cir., 1905), appeal dismissed for want of jurisdiction, 200 U.S. 613 (1906). The doctrine of res judicata must be so limited since a factual issue cannot, consistent with the statutory right to appellate review, be said to have been finally adjudicated when the appellant has been precluded from obtaining the appellate review which he sought and to which he would have been entitled if the fact had been material. Because this court did not pass upon the Commission’s Western Lands determination of the political structure question, we hold that the Commission’s determination cannot serve as a bar to relitigation of that issue in these proceedings.
Anticipating this holding, the appellees have suggested that we affirm the decisions below on the ground that the Commission’s determination of the political structure question is supported by the “record taken as a whole.” We appre *486 ciate the parties’ interest in bringing this litigation to a close. But since the Commission’s decisions in the cases here on appeal depend upon its Western Lands determination of the political structure question, our review would have to be made on the erroneous supposition that the Western Lands determination was conclusive against the appellants at the trial level.[9]
Since the Commission did not make a de novo determination of the political structure question in reaching its final determinations of the claims here on appeal, and since we do not deem the Commission’s findings in the Western Lands case conclusive against the appellants, the question of fact essential to these judgments has not been decided. Accordingly, we are obliged to reverse and remand these cases to the Commission with instructions that it make a de novo determination of the political structure of the Potawatomi Indians at the times when the United States negotiated the various treaties with them giving rise to the claims asserted in these proceedings.[10]

Reversed and remanded.

 60 Stat. 1054 (1946), as amended, 74 Stat. 829 (1960).

 In the notice of appeal, counsel for the appellants Identified his clients as Including the Hannahvllle Indian Community, the Forest County Pota-watomi Indians, the Potawatomi Indians of Indiana and Michigan, Inc., Michael B. Williams, John E. Winchester, John Topash, E. C. Mix, Albert N. Mackety, Valentine Eitchie, Ike George, Frank Wandahsega, Elija Petonquet, “et al.” Since the Potawatomi Indians of Indiana and Michigan, Inc., and three of the individuals — Winchester, Topash and Mix — have not been recognized as parties by the Commission, we assume that they are not properly identified as appellants.

 At the close of its opinion, the Commission majority suggested that Mackety, and the group which he represents, may he entitled to intervene “upon a showing of a ‘common interest’ in the subject matter of the pending dockets in which other Indian claimants are also seeking to recover additional compensation for the areas ceded under the 1805 and 1807 treaties [footnote omitted].” 14 Ind. Cl. Comm. 204, 217.

 The Commission noted that its order of dismissal as to Williams’ claim would be entered “without prejudice to Williams’ possible rights of intervention” in other pending proceedings on claims arising under the 1821 treaty. 14 Ind. Cl. Comm. 329, 340.

 For example, the final order states that the “petitioners herein [which includes appellants] are entitled to recover from the defendant, on behalf of the united Nation of Chippewas, Ottawas and Potawatomie Indians of the Waters of the Illinois, Milwaukee and Manltoouck Rivers, the sum of * * * $2,094,573.02 * * The unamended opinion stated that those of the appellants who “have a right to institute and maintain an action in a representative capacity herein are confined to those descendants of non-emigrating members of the united Nation of Indians et al., as it existed as of July 29, 1829, for any interests in claims arising out of the treaty of July 29, 1829.” 11 Ind. Cl. Comm. 693, 699. It seems probable that the amendment, which declared that the appellants are entitled to assert a claim on behalf of the united Nation, was intended to give recognition to an earlier conclusion of the Commission, see 14 Ind. Cl. Comm. 329, 335, that the Hannahvilles were descendants of the United Nations band. The recognition of a right of Williams and Mackety to assert claims on behalf of the United Nation band was probably unintended. The Indian appellees have asked that we rectify this apparent error, but in view of our disposition of the appeal, such action is not necessary.

 In each of the decisions relevant to appellants in which he has participated, Commissioner Scott has dissented from the majority’s reliance on the doctrine of res judicata as well as its ultimate holding that the Potawatomies were members of separate autonomous bands. See 14 Ind. Cl. Comm. 172, 189 (1964); 14 Ind. Cl. Comm. 329, 341 (1964).

 There this court held that even though the Supreme Court’s determination of a fact question in an earlier litigation between the same parties may not have had an effect on its ultimate decision, that Court’s determination was conclusive against the Choctaws in subsequent litigation involving the same fact question since “the Choctaws presented the question [to the Supreme Court] for decision, it received detailed and careful consideration and was, in fact decided.” 133 Ct. Cl. 207, 209. The situation, the court added, was “fairly comparable to that of a prior decision which is rested on two grounds.” IMd.

See generally 2 K. Davis, Administrative Law Treatise, ch. 18 (1858).

 A review based on “the record taken as a whole” would also entail weighing the additional evidence offered by the appellants but excluded by the Commission as insufficient to require a vacating of the Western Lands determination of fact, which it had held was conclusive against the appellants. See 14 Ind. Cl. Comm. 172. The determination of the effect which this evidence has in the absence of a res judicata bar is for the Commission to decide. That determination cannot, consistent with the limitations of appellate review, be made by this court.

 The appellants have urged that we decide the disputed fact question on our own. But where the evidence, as here, is not so one-sided as to permit only one result, the Commission alone has jurisdiction to make findings of fact. As an appellate court, we are limited to reviewing those findings. See Osage Nation v. United States, supra.